# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PHYLLIS TORRES, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> ANDREW M. SAUL, ) <br> **Commissioner of the Social** ) <br> **Security Administration,** [1] ) <br> ) <br> Defendant. ) | Case No. CIV-18-155-SPS |

## OPINION AND ORDER

The claimant Phyllis Torres requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-two years old at the time of the administrative hearing (Tr. 41, 235, 239). She completed tenth grade and has worked as a horse tender, material hander, and small products assembler (Tr. 44, 59-60). The claimant alleges that she has been unable to work since March 30, 2013, due to anxiety, depression, high blood pressure, severe headaches, muscle spasms, and neuropathy (Tr. 235, 239, 257).

## Procedural History

On April 23, 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 235-44). Her applications were denied. ALJ John W. Belcher conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 1, 2017 (Tr. 12-30). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found the claimant retained the residual functional capacity ("RFC") to perform light work

as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with occasional balancing, bending/stooping, kneeling, crouching, crawling, and climbing stairs, ladders, ropes, and scaffolding (Tr. 16). Due to psychologically-based limitations, the ALJ also found the claimant could perform simple and routine tasks and some complex tasks (allowing for semi-skilled work), in a habituated work setting, with superficial contact with co-workers and supervisors, but no contact with the general public (Tr. 17). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as a small products assembler, and alternatively because there was other work she could perform in the national economy, *e. g.*, bottling line attendant, conveyor line bakery worker, and poultry processor (Tr. 28-30).

## Review

The claimant contends that the ALJ erred by: (i) violating her due process rights in relying on evidence not part of the record, (ii) failing to fully develop the record, (iii) failing to properly evaluate the medical evidence, (iv) failing to assess her RFC by accounting for all her impairments, (v) failing to assess whether her impairments meet the requirements of Appendix 1, Part 404, Subpart P (the "Listings"), (vi) improperly determining that she could return to her past relevant work, and (vii) relying on vocational expert ("VE") testimony that was not inclusive of all her limitations. The Court agrees that the ALJ erred in determining the claimant could return to her past relevant work and in determining there was other work she could perform.

The ALJ found that the claimant had the severe impairments of hypertension, depression, and anxiety, but that her lumbar spine pain, headaches, and swelling and

-4-

numbness of her feet and hands were nonsevere (Tr. 14). The relevant medical evidence reveals that primary care providers at Stigler Health and Wellness treated the claimant for anxiety, depression, back pain, neuropathy, and hypertension from December 2014 through October 2016 (Tr. 376-407, 424-44). Their physical findings and mental status examinations were consistently normal (Tr. 376-407, 424-44).

The claimant established care with physician assistant Kadilyn Hourigan on October 2, 2015, and reported depression, anxiety, and weekly panic attacks (Tr. 367-68). Ms. Hourigan diagnosed the claimant with major depressive disorder, recurrent, severe, and panic disorder (Tr. 368). By December 2015, the claimant indicated she was doing well with treatment, functioning well at home, and had no major mood changes or anxiety (Tr. 371). She made similar reports in April 2016 and May 2016 (Tr. 472-75). At a follow-up appointment in August 2016, the claimant indicated she was "doing fine" and was caring for her three-year-old nephew, whom she planned to adopt, and Ms. Hourigan's mental status examination was normal (Tr. 466).

On August 11, 2015, Dr. Azhar Shakeel performed a consultative physical examination that was unremarkable (Tr. 340-42).

Todd Graybill, Ph.D., performed a consultative mental status examination on September 10, 2015 (Tr. 349-51). He noted the claimant's mood was extremely anxious, her right leg shook constantly throughout the interview, and she talked very rapidly, particularly during the early stages of the interview (Tr. 350-51). Dr. Graybill indicated that the claimant's abstract thinking was adequate, her judgment was minimally adequate,

and her intellectual abilities were in the average to low average range (Tr. 350-51). He diagnosed the claimant with general anxiety disorder and dysthymia (Tr. 351).

State agency psychologist Bruce Lochner, Ph.D. completed a Psychiatric Review Technique form and mental RFC assessment in September 2015 (Tr. 93-94, 97-99). He found there was insufficient evidence to rate the severity of the claimant's mental impairments on or before her date last insured, thus his mental RFC assessment was a current evaluation (Tr. 95, 97). Dr. Lochner concluded that the claimant could understand, remember, and carry out simple and some, but not all, more complex instructions under routine supervision and could relate to the general public, coworkers, and supervisors in an incidental manner and for work-related purposes (Tr. 99). State agency psychologist Joan Holloway, Ph.D., affirmed Dr. Lochner's findings, but further concluded that the claimant could adapt to a stable work situation (Tr. 142-43).

State agency physician Dr. Nabeel Uwaydah completed a physical RFC assessment on September 17, 2015 (Tr. 92-93, 96-97). He found there was insufficient evidence to rate the severity of the claimant's impairments at her alleged onset date and before her date last insured, thus his physical RFC assessment was a current evaluation (Tr. 92-93, 96-97). Dr. Uwaydah found the claimant could perform the full range of medium work and his findings were affirmed on review (Tr. 96, 140-42).

The ALJ elicited testimony from a VE at the administrative hearing (Tr. 58-65). The VE testified that the claimant's past relevant work included horse tender (DICOT § 410.674-022), a heavy, unskilled job with a Specific Vocational Preparation ("SVP") of 2; and material handler (DICOT § 929.687-030), a heavy, semi-skilled job with an SVP of

3 (Tr. 59). The ALJ then asked the claimant about her work as a production worker in 2002 and 2003 and she explained that she worked full-time at Maybelle Cosmetics doing assembly line work (Tr. 59-60). At the ALJ's request, the VE characterized this job as small products assembler (DICOT § 706.684-022), a light, unskilled job with an SVP of 2 (Tr. 60). The ALJ then posed a number of questions requiring the VE to assume various limitations and identify the work someone with such limitations could perform (Tr. 61-67). As relevant to this appeal, the ALJ posited an individual with the age, education, and work history of the claimant who could perform light work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling; superficial contact with coworkers and supervisors (similar to what a grocery clerk might have with those groups); and no public contact (Tr. 62). The VE testified such a person could return to the claimant's past relevant work as a small products assembler and could also perform the jobs of bottling-line attendant (DICOT § 920.687-042), conveyor line bakery worker (DICOT § 524.687-022), and poultry processor (DICOT § 525.687-070) (Tr. 62-63). Although the ALJ's ultimate RFC assessment limited the claimant to semi-skilled work in a habituated work setting, the relevant hypothetical question he posed to the VE did not include such limitations (Tr. 17, 62).

    In his written opinion, the ALJ determined the claimant's RFC as first described above, and found she was capable of performing her past relevant work as a small products assembler as actually performed and as generally performed (Tr. 28). The ALJ also made the alternative finding that the claimant could perform the jobs of bottling line attendant, conveyor line bakery worker, and poultry processor (Tr. 29).

Step four has three distinct phases. The ALJ must: (i) establish the claimant's RFC, then (ii) determine the demands of her past relevant work (both physical and mental), and (iii) ultimately decide if her RFC enables her to meet those demands. *See, e. g., Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ must specify his factual findings at each phase, *see id.*, and although the ALJ may *rely on* information provided by a VE, "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform h[er] past relevant work." *Id.* at 1025. Here, the claimant contends that the ALJ failed to properly account for the demands of her past relevant work at phase two of the step four evaluation process, and thus his conclusion that she could perform her past relevant work was not properly supported by evidence.

At phase two of step four, the ALJ did not elicit any evidence about the demands of the small products assembler job from either the claimant as she performed it or from the VE as it is ordinarily performed, and the Court finds the VE's testimony as to the exertional level and skill level was insufficient to establish such demands in light of the claimant's postural and mental limitations. *See, e. g., Sissom v. Colvin*, 512 Fed. Appx. 762, 768-69 (10th Cir. 2013) (the ALJ "failed to develop the record with 'factual information' regarding the claimant's past relevant work" by relying solely on VE testimony as to the exertional level and skill level of the claimant's past relevant work because such "limited testimony . . . is insufficient to determine the physical and mental work demands of [the claimant's] [past relevant work].")*, citing Winfrey,* 92 F.3d at 1024. Thus, the ALJ was wholly without evidence as to the physical and mental demands of the claimant's past relevant work, either as she actually performed it or as it is customarily performed in the national economy. *See,*

*e. g.*, *Westbrook v. Massanari*, 26 Fed. Appx. 897, 903 (10th Cir. 2002) (finding that remand under *Winfrey* is appropriate only when the record is "devoid of even any mention of the demands of past relevant work[.]") [citation omitted]

Additionally, at phase three of step four, the ALJ stated only that, "In comparing the claimant's residual functional capacity with the physical and mental demands of [the small products assembler job], the undersigned finds that the claimant is able to perform it as actually and generally performed." (Tr. 28). A conclusory statement such as this, without more, also constitutes error under *Winfrey*. *See Frantz v. Astrue*, 509 F.3d 1299, 1304 (10th Cir. 2007) ("The ALJ's conclusory statement that '[t]he exertional and non-exertional requirements of this job [as a general clerk] are consistent with the claimant's residual functional capacity' is insufficient under *Winfrey* to discharge his duty to make findings regarding the mental demands of Ms. Frantz's past relevant work. This case is unlike *Doyal v. Barnhart,* 331 F.3d 758, 761 (10th Cir. 2003), where the ALJ quoted the VE's testimony approvingly in support of his own findings at steps two and three of the analysis. Here, there was no VE testimony, and no evidence of any kind, to establish the mental demands of Mr. Frantz's past relevant work and thus no evidence to support a finding that Ms. Frantz retains the mental RFC to work as a general clerk."). Such a process, although arguably sufficient at step five, is nevertheless wholly inadequate at step four of the sequential analysis, as the *Winfrey* court explained in detail:

> At step five of the sequential analysis, an ALJ may relate the claimant's impairments to a VE and then ask the VE whether, in his opinion, there are any jobs in the national economy that the claimant can perform. This approach, which requires the VE to make his own evaluation of the mental and physical demands of various jobs and of the claimant's ability to meet

> those demands despite the enumerated limitations, is acceptable at step five because the scope of potential jobs is so broad.
>
> At step four, however, the scope of jobs is limited to those that qualify as the claimant's past relevant work. Therefore, it is feasible at this step for the ALJ to make specific findings about the mental and physical demands of the jobs at issue and to evaluate the claimant's ability to meet those demands. Requiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review. When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review.

92 F.3d at 1025. The ALJ thus erred not only in failing to make appropriate findings in the second phase of step four, but also in ceding decision-making authority to the VE in the third phase of step four. *See id.* at 1026 ("In the second phase, the ALJ failed to develop the record on, and to make the required findings about, the mental demands of [the claimant's] past relevant work. This failure infected the third phase, where the ALJ abdicated his fact finding and evaluation responsibilities to the VE.").

Nonetheless, any step four errors are considered harmless when the ALJ makes proper alternative step five findings. *See Martinez v. Astrue,* 316 Fed. Appx. 819, 824 (10th Cir. 2009) ("Because we conclude . . . that the ALJ's step-five finding was proper, we agree with the district court that the ALJ's *Winfrey* error was harmless. Contrary to Ms. Martinez's argument, her capacity to perform the specific requirements of a past sedentary job has no bearing on her capacity to perform different sedentary jobs at step five because the ALJ made findings regarding her specific limitations for step-five purposes."). But here, the ALJ did not make proper findings at step five because the relevant hypothetical question posed to the VE did not include all of the limitations contained in the ALJ's

ultimate RFC assessment. When an ALJ relies on a VE's testimony at step five, the hypothetical question posed to the VE must "relate with precision all of a claimant's impairments." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) [quotation omitted]. If the hypothetical question posed to the VE does not include all of the ALJ's RFC limitations, the VE's testimony cannot constitute substantial evidence to support the Commissioner's decision. *Id.* Here, the RFC limited the claimant to light work with occasional postural limitations and "simple and routine tasks and some complex tasks, allowing for semi-skilled work, in a habituated work setting. . .," but the relevant hypothetical question did not address the work setting at all (Tr. 16-17, 60-63).[3] This is not harmless because the Court cannot determine from the information available to it whether the jobs the VE identified take place in a habituated work setting. *See Mitchell v. Astrue,* 2010 WL 3733287, at *8 (N.D. Okla. Sept. 17, 2010) ("The Court cannot know if these words would have had significance to the VE, and whether they would have affected the VE's testimony regarding the number of jobs [the claimant] could perform, because those words were not included in the hypothetical to the VE."). Thus, the ALJ could not rely on the VE's opinion as substantial evidence that the claimant could perform the jobs of bottling line attendant, conveyor line bakery worker, and poultry processor.

Because the ALJ failed to conduct a proper step four analysis of the claimant's ability to perform her past relevant work and did not include all the RFC limitations in the

---

[3] The ALJ's hypothetical question also did not address any skill level limitations. This is a harmless error here because the VE identified only unskilled jobs. *See* Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *3 (December 4, 2000) ("unskilled wok corresponds to an SVP of 1-2").

hypothetical question posed to the VE at step five, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings. On remand, the ALJ should elicit evidence and make specific factual findings on the specific demands of the claimant's past relevant work as a small products assembler at phase two of step four and then determine at phase three whether she can perform such work with her RFC. If the ALJ determines at step four that the claimant cannot perform her past work, he should then present appropriate questions to a VE based on her RFC at step five and determine what work she can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 18th day of September, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**